# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

| | | |
|---|---|---|
| **CURTIS WRIGHT, SR., and** | : | |
| **WANDA DENISE BOSTON,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 7:06-cv-15(HL) |
| | : | |
| **STATE PARK RANGER** | : | |
| **CHET POWELL,** | : | |
| | : | |
| Defendant. | : | |

_____

# <u>ORDER</u>

Before the Court is the Motion for Summary Judgment (Doc. 22) of Defendant Chet Powell. After consideration of the pleadings and depositions, together with the affidavits and the briefs of the parties, the Court grants Defendant's Motion for the reasons set forth below.

## I.   BACKGROUND

On December 1, 2005, Curtis Wright, Jr., a twenty-year-old African-American, was shot by Department of Natural Resources conservation ranger Chet Powell, who is Caucasian. Wright died from the injuries he sustained as a result of the shooting. Wright's mother, Wanda Denise Boston, and his father, Curtis Wright, Sr., have filed suit in this Court, alleging that Wright's death resulted from the wrongful acts of Powell. Plaintiffs have sued Powell in his individual capacity under 42 U.S.C. § 1983 for violation of Wright's rights under the Fourth, Eighth and Fourteenth Amendments of the United

States Constitution.  Plaintiffs have also brought a state law claim for assault and battery against Powell.  Plaintiffs claim the right to recover for the wrongful death of Wright under O.C.G.A. § 19-7-1[1], and also seek to recover the full value of Wright's life pursuant to O.C.G.A. §§ 51-4-1 to 51-4-5.[2]  In moving for summary judgment, Defendant contends he is entitled to judgment as a matter of law as to all claims against him.

## II.    STATEMENT OF FACTS

The Court's findings are drawn largely from the affidavit of Defendant Powell, the averments of which are generally uncontroverted.  After viewing the evidence in the light most favorable to Plaintiffs, as the nonmoving parties, the Court finds as follows.  On December 1, 2005, Chet Powell was on duty as a conservation ranger at Reed Bingham State Park in Adel, Georgia.[3]  Powell was contacted by Lester Higgins, who notified Powell that a black male was beating on a Coke machine located near the pavilion on the

---

[1] O.C.G.A. § 19-7-1 provides that in every case of the homicide of a child, there shall be some party entitled to recover the full value of the life of the child. O.C.G.A. § 19-7-1(c)(1) (LexisNexis Supp. 2007).  Where the deceased child does not leave a spouse or child, the right of recovery is in the parents. O.C.G.A. § 19-7-1(c)(2). (LexisNexis Supp. 2007).

[2] O.C.G.A. § 51-4-4 provides that the "right to recover for the homicide of a child shall be as provided in Code Section 19-7-1.  O.C.G.A. § 51-4-4 (Lexis 2000).  Thus, a claim brought pursuant to § 51-4-4 is the same claim as that brought pursuant to § 19-7-1 and is generically identified in Georgia as a wrongful death claim.

[3] Plaintiffs contend, without elaboration or authority, that Powell was employed as a "State Park Naturalist."  Powell refers to himself as a conservation park ranger.  (Powell Aff. ¶ 5, Doc. 22-3.)  The Georgia Code authorizes the Georgia Department of Natural Resources to establish a unit of peace officers to be known as "conservation rangers."  O.C.G.A. § 27-1-16 (LexisNexis 2007).  In accordance with this Code Section, the Court will use the term "conservation ranger" or "ranger" when referring to Powell's employment position on the date at issue here.

park property.[4]  Upon receiving the information, Powell left his office and got in a Department of Natural Resources' (DNR) pick-up truck.  The pick-up truck, a white Ford F-150, had DNR decals on both front fenders and State of Georgia law enforcement emblems on both doors.  Powell was wearing a ranger uniform with identifying decals, a badge, and a gun.   Powell drove the truck to the pavilion area of Reed Bingham State Park, where the Coke machine was located.

As he was driving toward the pavilion, Powell saw an African-American male jump off the pavilion, place an object on the ground, and walk toward the beach area. Powell then parked his truck, and made contact with the man, who was later identified as Curtis Wright, Jr.,  by asking him if he had a problem with the Coke machine.  Wright denied any problem with the Coke machine, indicating that some other man, who left in a truck, had a problem with the machine.  Wright then walked past Powell toward a car parked in front of the pavilion.

Believing that Wright was the man who had been observed beating on the Coke machine, Powell told Wright about the report he had received.  In response, Wright moved away from Powell and toward his car.  Powell then observed that there had been damage to the Coke machine and walked toward Wright to stop him.  As Powell reached toward Wright, Wright reached toward his waist and drew an object from his waistband.  Powell pulled his gun and told Wright he was under arrest.

---

[4] Defendant identifies Higgins as a volunteer at Reed Bingham State Park.  Plaintiffs deny that Higgins was a volunteer and describe him as a private citizen.  For reasons set out elsewhere in this Order, it does not matter whether Higgins was a volunteer or a private citizen at the time.

While holding his gun on Wright, Powell observed that Wright was holding a screwdriver. Powell then holstered the gun and withdrew a can of pepper spray from his belt. Wright then attempted to move to his car. Powell threatened to spray Wright with the pepper spray if Wright did not stop. Wright did not stop and, instead, attempted to get into his car. Powell sprayed him in the face and on the torso with the pepper spray. Powell then placed the can of pepper spray back onto his belt and withdrew his gun.

After drawing his gun, Powell opened the door on Wright's car and ordered Wright to get out and place his hands behind his back. Wright complied with Powell's directions. Powell then holstered the gun again, in order to handcuff Wright. As he did so, Wright turned and struck Powell and knocked Powell backwards. Powell and Wright then engaged in a struggle. As Powell was struggling with Wright, Wright jumped into the car and turned the ignition. Wright then moved the car in reverse, catching Powell with driver's side door and dragging him backwards. As the car was moving backwards, Powell struggled with Wright and attempted to turn the car off.

A visitor to the park, Margaret Henson, observed Powell as he was attempting to handcuff Wright and saw Wright turn and push Powell and then attempt to get into the car. (Henson Aff. ¶ 7.) Henson also watched as Wright backed up the car and caught Powell in the open car door. (Henson Aff. ¶ 9.) She saw the two struggling and believed that they were struggling over the gun. (Henson Aff. ¶ 10.)

As Powell and Wright struggled, Wright let go of the steering wheel and moved toward Powell's gun. When Wright removed his hands from the steering wheel, the car

ran into the pavilion and came to a sudden stop. Henson watched the car hit the pavilion. (Henson Aff. ¶ 11.) Using both hands, Wright continued to reach for Powell's gun, but Powell got to the gun first and shot Wright two times, once in the thigh and once in the chest. Henson did not see Powell shoot Wright and did not hear gun shots, but after the car hit the pavilion, Henson saw Wright and Powell fall out of the car. (Henson Aff. ¶ 11, 12.) Powell remained on his feet, while Wright remained on the ground. (Henson Aff. ¶ 11.) Henson realized that Wright had been shot when she heard Powell say, "I've never shot a man in my life." (Henson Aff. ¶ 12.) Wright died as a result of the gunshot wounds.

## III.    CONCLUSIONS OF LAW

Defendant has moved for summary judgment as to all claims against him. Plaintiffs contend that summary judgment is not appropriate because jury issues remain as to whether the decision by Powell to shoot Wright was reasonable under the circumstances.

### A.    Summary Judgment Standard

At the summary judgment stage, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal

quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26, 106 S. Ct. at 2553-54. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

## B.    Plaintiffs' Section 1983 Claim

In Count I of their complaint, Plaintiffs allege Defendant is individually liable under 42 U.S.C. § 1983 "by depriving Curtis Wright, Jr. of the rights, privileges, and immunities secured to him by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution." (Compl. ¶ 22.) In Georgia, where death results from constitutional violations, a § 1983 claim may be brought on behalf of a deceased to redress the constitutional injuries inflicted.[5] *See* Robertson v. Hecksel, 420 F.3d 1254, 1260-62

---

[5] Such claims have been generically referred to as "wrongful death" claims. In Georgia, a "wrongful death" claim is one brought by the surviving spouse, child, or parent to recover for the value of the life of the decedent. Georgia law defines who is entitled to bring such a claim. *See* O.C.G.A. §§ 51-4-1 to 51-4-5 (Lexis 2000). The wrongful death provisions set forth at §§ 51-4-1 to 51-4-5 create a new cause of action for certain individuals for the value of a decedent's life. Gilmere v. City of Atlanta, 737 F.2d 894, 898 n.8 (11th Cir. 1984). A survival statute, however, permits survival of the tort claims which the deceased possessed the instant before he died. Id. Georgia's survival statute is set forth at O.C.G.A. § 9-2-41 (Michie 1982). A § 1983 claim brought to redress the constitutional injuries to the deceased is more properly treated as a survival action. However, case law addressing § 1983 claims brought in Georgia on behalf of a deceased has blurred the distinction between a "wrongful death" claim

(11th Cir. 2005) (discussing the decisions in <u>Brazier v. Cherry</u>, 293 F.2d 401 (5th Cir. 1961), and <u>Carringer v. Rodgers</u>, 331 F.3d 844 (11th Cir. 2003)).

Section 1983 is intended to provide a remedy to those persons whose constitutional rights have been infringed upon by a state official's abuse of his position while that official is acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" <u>Graham v. Connor</u>, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694 n.3 (1979)). In order to establish a § 1983 claim, a plaintiff must first show a violation of a right secured by federal law. <u>Skinner v. City of Miami</u>, 62 F.3d 344, 347 (11th Cir. 1995).

Defendant has raised the defense of qualified immunity as to the claims brought against him in his individual capacity. As the Supreme Court of the United States explained in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct. 2151 (2001), the initial inquiry for a court determining a qualified immunity issue must be whether "the facts alleged show the officer's conduct violated a constitutional right." <u>Id.</u> at 201, 121 S. Ct. at 2156. The reason for the Court's insistence "upon turning to the existence or nonexistence of a constitutional right as the first inquiry," is to enable the trial court to "set forth principles which will become the basis for holding that a right is clearly established." <u>Id.</u>

If the Court finds that no constitutional right has been violated, then the inquiry is

---

and a "survival action." *See, e.g.,* <u>Brazier v. Cherry</u>, 293 F.2d 401 (5th Cir. 1961). *See also* <u>Carringer v. Rodgers</u>, 331 F.3d 844 (11th Cir. 2003), *and* <u>Robertson v. Hecksel</u>, 420 F.3d 1254 (11th Cir. 2005).

ended, and Defendants would be entitled to summary judgment. If, however, the Court finds a constitutional right has been violated, then the Court must determine whether the right that was violated was clearly established in 2005, when the events giving rise to this claim occurred. Therefore, the Court will first undertake to examine the federal rights that are implicated by this case.

## 1. Eighth Amendment

Plaintiffs allege Powell deprived Wright of rights secured to him by the Eighth Amendment. However, it is well-established that the Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, was intended to protect those persons convicted of crimes. Thus, as the Supreme Court has noted, "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S. Ct. 1401, 1412 n.40 (1977). The Court later confirmed that when "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." Graham, 490 U.S. at 394, 109 S. Ct. at 1871. Accordingly, to the extent that Plaintiffs attempt to assert violations of rights protected under the Eighth Amendment, such claims are inappropriate and Defendant is entitled to summary judgment as to them.

## 2. Fourteenth Amendment

The Fourteenth Amendment has five sections; Plaintiffs have failed to

identify which of the five sections they contend Defendant violated. However, because they make a point in their complaint of noting that Wright was African-American and Powell is Caucasian, the Court will presume, as did Defendant, that Plaintiffs intended to bring their claim under the Equal Protection Clause of section one, which provides: "No State . . . shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.

When asked about the equal protection claim, Curtis Wright, Sr., stated that he believed Powell's conduct was racially motivated. (Wright Dep. at 51.) He further indicated that he believed the shooting was racially motivated because other people had told him that Powell was a racist. (Wright Dep. at 53.) Wright could not identify the people who had told him about Powell. (Wright Dep. at 53-56.) Wanda Denise Boston also stated that she believed that the shooting was racially motivated. (Boston Dep. at 27-28.) Like Wright, she based this belief on the comments of other people who told her that Powell was a racist, but she could not identify any of those people by name. (Boston Dep. at 32-33.)

"To state an equal protection claim, [the plaintiff] must allege that 'through state action, similarly situated persons have been treated disparately,' and put forth evidence that [the defendant's] actions were motivated by race." Draper v. Reynolds, 369 F.3d 1270, 1278 n.14 (11th Cir. 2004) (citation omitted). Here, Plaintiffs' vague suspicions that the shooting was racially motivated are insufficient to sustain an equal protection claim. Plaintiffs have offered no evidence that Powell treated Wright any differently than

he treated suspects of other races, and they have offered no admissible evidence that his actions were motivated by race. Accordingly, Plaintiffs' equal protection claim fails and Defendant is entitled to summary judgment as to it.

To the extent that Plaintiffs' claims are brought under the Due Process Clause of the Fourteenth Amendment, they also fail. Although state actors are subject to the Due Process Clause of the Fourteenth Amendment, claims of excessive force arising from an investigatory stop or seizure, such as that alleged here, are analyzed under the Fourth Amendment, rather than under the substantive due process standard of the Fourteenth Amendment. *See* <u>Graham</u>, 490 U.S. at 395, 109 S. Ct. at 1871. Therefore, to the extent that Plaintiffs assert violations of rights protected under the Fourteenth Amendment, Defendant is entitled to summary judgment as to them.

### 3. Fourth Amendment

As discussed above, Plaintiffs' § 1983 claim against Powell is properly analyzed under the Fourth Amendment. Furthermore, a claim of excessive force against a free citizen who has been seized, is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." <u>Graham</u>, 490 U.S. at 395, 109 S. Ct. at 1871. Defendant contends that under this standard he is entitled to summary judgment because the use of force employed by him was reasonable and justified under the circumstances. In order to analyze the objective reasonableness of Powell's actions, the Court must look at the conduct of both Wright and Powell as the incident between them progressed.

10

### a. The Initial Investigatory Stop and Subsequent Seizure

It is well established that the Fourth Amendment permits a law enforcement officer to conduct a brief, investigatory stop when the officer has reasonable, articulable suspicion of criminal activity. Illinois v. Wardlow, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)). A seizure of the person, as that term was applied in Terry, occurs when the officer has in some way restrained the liberty of a citizen. Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968).

In this case, Powell first made contact with Wright near the pavilion. At that time, Powell asked Wright if he had a problem with the Coke machine. Wright denied having a problem and continued walking past Powell. Wright was not seized at that time and, in fact, exercised his right to avoid the encounter by continuing to walk away from Powell. Not satisfied with Wright's responses, however, Powell continued to question Wright and also observed the Coke machine and noted damage to it. It was after Powell observed damage to the Coke machine that he moved toward Wright and attempted to place his hands on him. At that point, Wright was seized within the meaning of the Fourth Amendment. However, the Court finds no Fourth Amendment violation occurred because Powell had reasonable, articulable suspicion that Wright might have been attempting to break into the Coke machine given Wright's presence near the machine, his behavior in relation to it and toward Powell, the absence of other people in the area, and in view of Powell's observation of damage to the Coke machine.

### b. Application of Force

Having determined that Powell's investigatory stop of Wright was reasonable, the Court next must consider whether Powell's use of force was excessive. The law applicable to excessive force cases is well established:

> "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871 (1989)). A court looks to the "totality of circumstances" to determine whether the manner of arrest was reasonable. *See* Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S. Ct. 1694, 1700 (1985). "[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Lee, 284 F.3d at 1198 (citing Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir.1986)); *see also* Vinyard v. Wilson, 311 F.3d 1340,1347 (11th Cir. 2002). It is well settled that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S. Ct. at 1871-72; Vinyard, 311 F.3d at 1347; Lee, 284 F.3d at 1197. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97, 109 S. Ct. at 1872.

Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (footnote omitted).

Furthermore, as the United States Court of Appeals for the Eleventh Circuit has explained,

> the need for the application of force is measured by this test: "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."

Id. at 1277 n.13 (quoting Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002)). Applying the foregoing principles to the facts of this case, the Court finds that the use of force

employed by Powell was reasonable under the circumstances.

### i. First Application of Force

As discussed above, Powell lawfully stopped Wright to investigate the damage to the Coke machine. Rather than acquiesce to Powell's lawful efforts to seize him, Wright responded by pulling an object from his waistband in a threatening manner. Unable to tell what it was that Wright was holding, Powell responded to the perceived threat by pulling his gun from the holster and telling Wright that he was under arrest. It was then that Powell realized that Wright was holding a screwdriver. Powell then holstered his gun and, instead, removed pepper spray from his belt. Again, rather than accede to Powell's authority, Wright quickly moved away from Powell and toward his car. Powell threatened to spray Wright with pepper spray if he did not stop and comply with Powell's demands. Wright did not stop and did not comply and, as a result, Powell sprayed Wright in the face and on the torso with pepper spray. Powell's use of the pepper spray in these circumstances was reasonable in that Wright had repeatedly shown himself to be resistant to Powell's directions, and the amount of force carried by the use of the pepper spray was proportionate to the need to coerce Wright to obey Powell's commands. Unfortunately for the parties, the use of the pepper spray was not effective in diffusing the situation that had developed between Wright and Powell.

### ii. Second Application of Force

After spraying Wright with the pepper spray, Powell returned the pepper spray to the belt and pulled his gun from the holster. Powell ordered Wright

to get out of the car and place his hands behind his back.  Wright complied with Powell's directions and Powell holstered his gun a second time.  Yet, again, Wright responded in an inappropriate manner, this time striking Powell with his arm and knocking him backward, as a result of which a struggle ensued.  As the parties continued to struggle, Wright got back into his car and turned the ignition, then put the car in reverse, catching Powell in the car door and dragging him backwards.  During this time Powell attempted to turn the car's ignition off.

At some point during the struggle, Wright took his hands off the steering wheel and reached for Powell's gun.  When Wright removed his hands from the steering wheel, the car ran into the pavilion and stopped.  Both Powell and Wright attempted to remove the gun from the holster, but it was Powell who succeeded in gaining control of the gun. Powell then shot Wright twice.

As noted previously, courts look to the totality of the circumstances in determining whether an officer's use of force was reasonable.  Thus, the severity of the offense for which a suspect has been stopped is only one factor in the court's determination.  Here, Plaintiffs make much of the fact that Powell was investigating only a minor offense–the possible vandalism of or theft from a Coke machine–but other factors must also be considered.  Here, the danger to the officer appeared great.  Wright had previously shown himself to be uncooperative, having  made threatening gestures while holding a screwdriver.  Wright had pushed Powell, then moved the car in such a way that Powell was caught up in the door, and Wright had continued to fight Powell each step of the way,

including making attempts to gain control of Powell's gun.

Under these circumstances, the Court finds that Wright presented a risk of danger to Powell, and possibly others, sufficient to justify the use of deadly force. Wright had shown that he was hostile and aggressive and had already made at least one attempt to gain control of Powell's gun. Powell was justified in shooting Wright as they struggled over the gun because it was objectively reasonable for Powell to be concerned that Wright would continue to fight him for the gun and might succeed in gaining control of the gun and ultimately shooting Powell or others in the area.

### 4. Conclusion

In view of the foregoing, the Court finds that the stop of Wright was lawful, and that the use of force was reasonable under the circumstances. Therefore, Plaintiffs have failed to show that Defendant violated Wright's rights under the Fourth Amendment. Plaintiffs have also failed to establish violations of Wright's Eighth and Fourteenth Amendment rights. In this § 1983 claim, therefore, Plaintiffs have failed to demonstrate the violation of a federal constitutional or statutory right. As a result, no § 1983 claim can be maintained against this Defendant and, therefore, Defendant's Motion for Summary Judgment is granted as to the § 1983 claims against him.

### C. Other Arguments of Plaintiffs

In opposing summary judgment, Plaintiffs make several arguments, some of which

the Court will address briefly.[6]

### 1. Powell was acting as a "State Park Naturalist" at the time of the events in question and had no peace officer duties and no authority to investigate a crime related to the Coke machine. (Pls.' Br. Opp'n Def.'s Mot. Summ. J., Doc. 39, at 4.)

In his affidavit, Powell states that on December 1, 2005, he was employed as a conservation park ranger. (Powell Aff. ¶ 5.) Although Plaintiffs apparently dispute Powell's statement, they have come forward with no evidence, other than their own unsubstantiated assertions, that would create a jury question on the issue. In the absence of any admissible evidence to the contrary, the record supports a finding that Powell was employed as a conservation ranger on December 1, 2005.

Department of Natural Resources conservation rangers are deemed to be a unit of "peace officers" and are charged with law enforcement responsibilities pertaining to the DNR. O.C.G.A. § 27-1-16 (LexisNexis 2007). Various powers are delegated to conservation rangers, including the power to "exercise the full authority of peace officers while in the performance of their duties." O.C.G.A. § 27-1-20(a)(10) (LexisNexis 2007). The Court of Appeals of Georgia has construed § 27-1-20(a)(10) broadly and, for example, has interpreted it to permit conservation rangers to pull over vehicles whose drivers' appear impaired. Smith v. State, 420 S.E.2d 29, 30 (Ga. Ct. App. 1992). Additionally, conservation rangers have the power to "enforce all state laws on all

---

[6] As to any of Plaintiffs' arguments not addressed in this Order, the Court finds they are without merit.

property owned or controlled by the department." O.C.G.A. § 27-1-18(a)(1) (LexisNexis 2007). In light of the powers assigned to conservation rangers by the Code, and as construed by the Georgia courts, this Court finds Powell had the authority to stop Wright to investigate a possible crime occurring on park property.

### 2. Powell had no authority to arrest Wright. (Pls.' Br. Opp'n Def.'s Mot. Summ. J., Doc. 39 at 7.)

The power delegated to conservation rangers to enforce all state laws also carries with it the power to "arrest persons accused of violating any law or regulation which such officers are empowered to enforce by the issuance of a citation." O.C.G.A. § 27-1-19(a) (LexisNexis 2007). However, the conservation ranger's arrest powers are limited by the following language: "provided that the offense is committed in the presence of the officer or information concerning the offense constituting a basis for arrest was received by the arresting officer from a law enforcement officer observing the offense being committed." O.C.G.A. § 27-1-19(a) (LexisNexis 2007).

Relying on the limiting language contained in § 27-1-19(a), Plaintiffs argue that Powell did not observe Wright in the act of committing an offense, and the information relayed to him concerning the Coke machine was relayed by Lester Higgins, who was a volunteer, not a law enforcement officer. (Pls.' Br. Opp'n Def.'s Mot. Summ. J., Doc. 39 at 7-8.) Plaintiffs apparently contend that under these circumstances, Powell had no authority to arrest Wright. The Court disagrees with this contention.

At the point where Powell actually attempted to place Wright under arrest, he was

no longer relying solely on the information conveyed to him by Higgins. In addition, he had personally observed suspicious behavior on the part of Wright, in the immediate vicinity of the Coke machine; noted the absence of other people or vehicles in the area; and observed damage to the Coke machine. Thus, Powell not only had the report of someone beating on the Coke machine, he had personally observed sufficient suspicious activity to have probable cause to believe that a crime had been committed by Wright. He, therefore, had the right to arrest Wright. *See, e.g.,* Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (holding that law enforcement officers have probable cause to arrest when the facts and circumstances within their collective knowledge, "or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense").

### 3. Summary judgment must be denied because a jury should decide whether the shooting was justified. (Pls.'s Br. Opp'n Mot. Summ. J., Doc. 39, at 2, 3, 6, 9.)

Plaintiffs' pleadings suggest that because only Powell's version of events can be obtained, a jury must be allowed to decide whether Powell's account of what occurred is credible. The law does not support these contentions, however.

In this case, Powell has offered his affidavit testimony as to what transpired between himself and Wright. Plaintiffs apparently contend that, rather than accept Powell's unopposed affidavit, the Court should require that a jury determine Powell's credibility. However, Plaintiffs cannot avoid "a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations

18

or subjective evidence." Cox v. Ky. Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995). Instead, as the nonmoving parties, they must present affirmative evidence to defeat a properly supported motion for summary judgment. As another district court noted, when faced with what it considered to be self-serving testimony, "Mere arguments (or even persuasive incantations) as to the probable lack of credibility of a non-movant's affidavit, when offered in opposition to a summary judgment motion, cannot suffice to discredit that testimony and pave the way for success on the motion." Rose Marine Transp., Inc. v. Kaiser Aluminum & Chem. Corp., 758 F. Supp. 1218, 1221-22 (N.D. Ill. 1990).

Plaintiffs have done very little to create fact issues. For example, Plaintiffs apparently chose not to take Powell's deposition, thereby denying themselves the opportunity to challenge the statements made by him in his affidavit. Similarly, Plaintiffs apparently chose not to take the deposition of Margaret Henson, and thus denied themselves the opportunity to challenge the statements contained in her affidavit. The record reveals that Margaret Henson's husband was at the scene with her, but Plaintiffs apparently failed to take his deposition, even though it might have offered a contrary view of how the events occurred. Nor did Plaintiffs offer any expert testimony to contradict Powell's version of events.

The record also shows that the incident was investigated by the Georgia Bureau of Investigation and that their investigative report was made available to Plaintiffs. Yet, Plaintiffs have offered nothing that would allow a factfinder to discredit Powell's testimony and conclude, for example, that Wright did not have a screwdriver, or that there

was no damage to the Coke machine, or that pepper spray was never used on Wright, or that the location of the wounds made Powell's account incredible. In short, Plaintiffs have offered nothing to challenge Powell's version of events. Given the absence of any affirmative evidence that could create issues for a jury, Plaintiffs cannot defeat Defendant's properly supported motion for summary judgment.

### D. State Law Claims for Assault and Battery

In Count III of their complaint, Plaintiffs allege Powell "negligently, recklessly, willfully and/or wantonly committed an assault and battery on Curtis Wright, Jr. by shooting him in such a manner as to cause his death." (Compl. ¶ 25.) As Defendant noted in his brief in support of summary judgment, Plaintiffs' state law claims for assault and battery are barred by the Georgia Tort Claims Act. In recognition of this, Plaintiffs have withdrawn all claims brought under the Georgia Tort Claims Act. (Pls.' Br. Opp'n Mot. Summ. J. at 8.) Therefore, Plaintiffs' state law claims for assault and battery are hereby dismissed.

## IV.  CONCLUSION

Defendant is entitled to judgment as a matter of law as to Plaintiffs § 1983 claims insofar as they are predicated on violations of rights protected under the Eighth and Fourteenth Amendments. Furthermore, Plaintiffs have failed to come forward with evidence sufficient to create jury questions on the issue raised by their claims of violations of rights protected by the Fourth Amendment. Therefore, Defendant is entitled to summary judgment as to Plaintiffs' claims against him in his individual capacity under

§ 1983. Plaintiffs' state law claims for assault and battery are hereby dismissed. There being no other claims remaining, the Clerk is directed to enter judgment accordingly.

**SO ORDERED**, this the 2nd day of November, 2007.


_s/   Hugh Lawson_
**HUGH LAWSON, JUDGE**

mls